Thomas Byrne REYNOLDS, Karen Dewees Reynolds, Watt W. Reynolds, III, John Wesley Jones and Wife Marilyn Jones, Jane Schlansker and Lana B. Ferrier, Appellants,

v.

Russell M. HAWS, James W. Schell, Sam Day, the Board of Adjustment of the City of Fort Worth, Seville II—a Partnership, Appellees.

No. 2–85–247–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 25, 1987.

Rehearing Denied Dec. 23, 1987.

Garrett & Settle, and Elizabeth J. Austin and Rufus S. Garrett, Jr., Fort Worth, for appellants.

Barlow & Garsek, and Sandra K. Houston and James B. Barlow, Fort Worth, for appellees Haws, Schell, Day and Seville II.

Wade Adkins, City Atty., William W. Wood and Wayne K. Olson, Ass't City Atty., Fort Worth, for appellees Bd. of Adj. of the City of Fort Worth.

Before JOE SPURLOCK, II, HILL and KELTNER, JJ.

OPINION

JOE SPURLOCK, II, Justice.

Appellants, Thomas Byrne Reynolds, his wife, and other home owners, seek reversal of a trial court judgment which dismissed with prejudice their petition for judicial review of a decision of the Board of Adjustment of the City of Fort Worth ("Board").

We affirm the judgment.

Appellants, plaintiffs below, are homeowners in Fort Worth who opposed a zoning exception and variance. Russell M. Haws and James W. Schell had requested the variance and exception to build an auxiliary parking lot on a piece of land located in appellants' neighborhood.

Because this case was brought under the provisions of TEX.REV.CIV.STAT.ANN. art. 1011g (Vernon Pamph.Supp.1987), and all the points of error center around construction of this statute, we set out below two portions of the statute which govern appeals from a board of adjustment to the trial court:

(j) Any person or persons, jointly or severally, aggrieved by any decision of the Board of Adjustment, or any taxpayer, or any officer, department, board or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within ten (10) days after the filing of the decision in the office of the Board.

(k) Upon presentation of such petition the court may allow a writ of certiorari directed to the Board of Adjustment to review such decision of the Board of Adjustment and shall prescribe therein the time within which a return thereto must be made and served upon the relator's attorney, which shall not be less than ten (10) days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the Board and on due cause shown, grant a restraining order.

**584**

TEX.REV.CIV.STAT.ANN. art. 1011g, secs. (j) and (k).

█ All five of appellants' points of error involve a determination of whether plaintiffs/appellants followed the procedures set forth in article 1011g. We know of no case which clearly delineates each and every step necessary to pursue an appeal from a Board of Adjustment's decision. However, in the relevant cases, one pattern clearly emerges: the right to appeal an abuse of discretion by the board is only that granted solely by article 1011g. The procedures set forth therein must be strictly followed in order for the trial court to acquire jurisdiction. *See, e.g., City of Lubbock v. Bownds,* 623 S.W.2d 752, 755 (Tex.App.—Amarillo 1981, no writ). *Compare Scott v. Board of Adjustment,* 405 S.W.2d 55 (Tex.1966); *Board of Adjustment of City of Fort Worth v. Stovall,* 147 Tex. 366, 216 S.W.2d 171 (1949); and *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67 (1945). All of these cases deal with construction of the statute, and in each the court looked to the statute for the proper determination of procedural matters. We will review the procedures followed by appellants in the instant case to determine if they complied with the statute.

On January 9, 1985, after a hearing before the Board at which both sides were present, the Board granted the variance and exception. Appellants filed suit on January 18, 1985 in district court, seeking review of the Board's decision, but named only Haws and Schell as defendants. Nevertheless, on January 23, 1985, the trial court ordered the issuance of a writ of certiorari to the Board.[1]

On March 8, 1985, after service of a second writ upon its chairman, the Board filed a return. The return included many of the documents necessary to the appeal, but in its return the Board complained that the trial court was without jurisdiction because appellants had failed to make the Board a party-defendant to the lawsuit. The Board later filed an additional return, in response to a supplemental writ of certiorari.

Appellants first named the Board as defendants in the "Plaintiff's First Amended Original Petition" filed on March 21, 1985. Haws and Schell had filed a "Plea in Abatement" raising the issue of non-joinder of the Board which the trial court had granted. The trial court later granted Haws and Schell's motion for summary judgment and the Board's plea to the jurisdiction. The court found that appellants had failed to *timely file* a petition naming the Board of Adjustment as a party-defendant.

In five points of error, appellants allege that the trial court erred in: (1) finding that the Board was not joined originally as a party-defendant; (2) finding that the Board was a necessary party; (3) finding that the procedural steps necessary to invoke the jurisdiction of the trial court were not taken; (4) dismissing the case; and (5) finding that the suit was not filed within ten days after the filing of the decision in the office of the Board. We will discuss these points out of order.

In their fifth point of error, appellants allege that the trial court erred in finding that the Board was not joined as a party-defendant within ten days of the filing of the Board's decision in the Board's office. Appellants first named the Board as a party-defendant when they filed their first amended petition on March 21, 1985. In that petition, appellants alleged:

Said decision of the Board of Adjustment ... was filed in the office of the Board on January 9, 1985. Said decision was corrected and on information and belief, included in the minutes of the Board.

Appellant's later amended their petition to allege that the Board's decision was not filed until April 3, 1985, which would have been after the lawsuit was filed. Certainly the petition would not then have been late.

Haws and Schell, however, filed a motion for summary judgment on April 30, 1985. They alleged that the Board was not made a party-defendant until March 21, 1985, a

---

**1.** Appellants later caused two additional writs of certiorari to be issued, as the first two writs were apparently incomplete or otherwise defective.

date after the ten-day limit expired. Therefore, they claimed the trial court had no jurisdiction over the cause. After originally filing a general denial, the Board later filed a "Plea to the Jurisdiction," alleging that joinder of the Board as a defendant was not made within the ten-day requirement of article 1011g(j).

Appellants, responded to the motion for summary judgment by asserting: (1) the Board was not a necessary party; (2) the Board was made a party by appellants requesting relief from the Board's actions in their original petition and by appellants causing a writ of certiorari to be issued against the Board; and (3) the ten-day period did not begin to run at any time before March 11, 1985, because the "minutes" of the Board were not filed in the Board's office until April 3, 1985. Appellants further claimed that the decision of the Board was not final until the minutes were typed into the Board's minute book. In their trial brief opposing dismissal, appellants claimed that a "decision" referred to in article 1011g(j) is not "filed" until the minutes are typed into the minute book.

In their second amended petition,[2] filed June 18, 1985, two days before the hearing on the motion for summary judgment and plea to the jurisdiction, appellants clarified their trial position by alleging therein:

A preliminary draft of the decision of the Board of Adjustment, ... was filed in the office of the Board on January 9, 1985. Said decision was corrected and typed into the minutes of the Board on April 3, 1985.

2. Although the Board contends that appellants "plead themselves out of court" with their first amended pleading, by the time the trial court heard the plea to the jurisdiction, the second amended petition was the only "live" pleading. *See Dolenz v. All Saints Episcopal Hosp.*, 638 S.W.2d 141, 142 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). Furthermore, Haws's and Schell's motion for summary judgment depended entirely on the trial court's finding that an indispensable party was not joined and was,

In a judgment signed October 7, 1985, after additional briefs by the parties, the trial court dismissed the case with prejudice. The judgment recited the following rationale as its basis:

[T]he Board of Adjustment ... was not a party defendant in the Original Petition filed by Plaintiffs, that neither the Board nor the City of Fort Worth ... was ever joined as a party-defendant and that either the Board or the City is a necessary party that had to be joined as a party-defendant and suit filed against one of those party-defendants within ten (10) days after filing of the decision complained of in the office of the Board and that the Plaintiffs' cause of action against the Defendants is dismissed. Further, given that neither the Board nor the City was joined as a party-defendant and suit filed within ten (10) days after filing of the decision in the office of the Board, Plaintiffs are not entitled to maintain this cause of action.

Although it is not apparent that the trial court considered the issue, it appears from the record that the parties were actually disputing, among other things, which of two documents filed in the Board's office was the "decision" mentioned in article 1011g(j).[3]

The first document, characterized as "the record of decisions" was filed in the Board's office on or before March 8, 1985.[4] The second document, characterized as "the minutes" of the Board, was filed on April 3, 1985.

The first document, "record of decisions," contains the following pertinent notations:

therefore, subject to the trial court's ruling on the Board's plea to the jurisdiction.

3. "[The] petition shall be presented to the court within ten (10) days after the filing of the *decision* in the office of the Board." Art. 1011g(j) [Emphasis added.]

4. This is the document that appellants' claimed, in the original petitions, was filed on January 9, 1985.

| | APPROVED | DENIED |
|---|---|---|
| B/A–84–268 Russell M. Haws, by James W. Schell 1701–1707 Sunset Terrace | | |
| Request SPECIAL EXCEP-TION in a "C" Multi-Family District to permit auxiliary parking. | x(5–0) (With Conditions) | |
| Request VARIANCE in "C" Multi-Family District to permit parking in the required front yard instead of the none permitted. | x(5–0) (Sunset Terrace) | x(5–0) (W. Daggett) |
| Request WAIVER of the chaining and locking requirements. | x(5–0) | |

The second document, "minutes", filed in the Board's office on April 3, 1985, reflects, among other things, the following notations:

Following lengthy general discussion among Board members and Staff members, including Assistant City Attorney Wayne Olson who informed the Board of the proper criteria to be considered in granting Special Exceptions and Variances, the Board, on a motion by Mr. Llewellyn, seconded by Mr. Young, on a vote of 4–1, with Mr. Pickett voting "no",

VOTED: To APPROVE B/A–84–268, the request of Russell M. Haws, by James W. Schell, for a SPECIAL EXCEPTION in a "C" Multi-Family District to permit auxiliary parking, AND

To APPROVE B/A–84–268, the request of Russell M. Haws, by James W. Schell, for a VARIANCE in a "C" Multi-Family District to permit parking in the required front yard on Sunset Terrace instead of the none permitted, AND To DENY the request to permit parking in the required front yard on West Daggett Avenue, AND

To APPROVE B/A–84–268, the request of Russell M. Haws, by James W. Schell, for WAIVER of the chaining and locking requirements; the SPECIAL EXCEPTION, VARIANCE AND WAIVER being subject to the following conditions:

1) A brick or poured concrete, architecturally pleasing, screening fence to be located ten feet from the W. Daggett Avenue property line;

2) The 10′ required front yard area along W. Daggett Avenue to be landscaped and maintained in a satisfactory fashion;

3) A screening fence of durable, architecturally pleasing material (poured concrete or brick) to be located along the property line on Sunset Terrace; and

4) No access driveway to be located along either Sunset Terrace or W. Daggett Avenue.

The minutes additionally reflect the evidence and argument presented to the Board, as well as some of the Board's rationale for its decision.

In considering the "record of decisions" we believe that a decision under article 1011g(j) is the same as an administrative order. There is no requirement that an administrative order contain the elements of a judgment in a court of law. Thus, it is only necessary that the order be sufficient to disclose the intention of the Board. *Wilson v. Board of Ed. of Fort Worth Ind. Sch. Dist.*, 511 S.W.2d 551, 554 (Tex.Civ. App.—Fort Worth 1974, writ ref'd n.r.e.) and *see Gragg v. Hill*, 58 S.W.2d 150, 152 (Tex.Civ.App.—Waco 1933, error ref'd); *Bevers v. Winfrey*, 260 S.W. 627, 633 (Tex. Civ.App.—Beaumont, 1924, no writ). We believe that the report of the Board's action in the "record of decisions" filed in the Board's office on or before March 8, 1985 was sufficient to disclose the intention of the Board.

In *Wilson*, the court uses the terms "decision," "ruling," "order," and "decree" synonymously, and speaks of "minutes" as if they were a decree or order. *Wilson*, 511 S.W.2d at 554. In the case on appeal, the second document filed, which appellants claim is the Board's appealable order, is labeled "minutes." We must decide if the subsequent filing of the "minutes" affects our conclusion that the "record of decisions" sufficiently disclosed the Board's intention.

■ We have carefully read the opinion by Chief Justice Massey in the *Wilson* case, affirming the trial court decision of (then) District Court Judge Joe Spurlock,

Sr. While Judge Massey spoke of "minutes" as the Board's action, it is clear he was in fact referring to the Board's "decree or order." *Id.*, at 554. Nowhere in the opinion is there any other reference to any "minutes" of the hearing or decision of the Fort Worth Board of Education or the State Board of Education, or in the record made before the State Commissioner of Education. Although the district board made findings, the point on appeal was that the State Board had not. There is no reference to any actual "minutes" that were considered by Judge Spurlock, Sr., at trial or by the appellate court. *Id.* We conclude *Wilson* does not require consideration of the "minutes" of a meeting when there is a separate "decision" otherwise made and filed in the office of the Board, which clearly discloses the Board's intention.

Although the decision filed in the case at bar was not as specific as a judgment should be, it sufficiently disclosed the intention of the Board to grant the requests for the variance, exception and waiver. We hold the "record of decisions" filed with the Board was sufficient to comply with article 1011g as a decision of the Board from which an appeal may have been taken. In this connection we paraphrase the Beaumont court in its decision in *Bevers*, 260 S.W. at 633. The order of March 8th was not void as being too indefinite or uncertain, but was in the nature of a final decision binding on the parties before it. We hold the "record of decisions" constituted a final appealable decision.

We overrule appellants' fifth point of error.

In their second point of error, appellants argue that the trial court erred in finding that the Board was a "necessary" party.[5] To determine this point of error we will consider TEX.R.CIV.P. 39, regarding joinder of parties, as well as the requirements of article 1011g. If the Board was not a necessary party, then all of appellants' pleadings would have been timely.

In *Stovall*, 216 S.W.2d 171, our Supreme Court decided that the Board of Adjustment of the City of Fort Worth had an appealable interest in appealing a trial court judgment which overruled its decision. The Board *had been made a party-defendant* in the trial court. The Supreme Court noted that it was "correct" to name the Board as a defendant. *Id.*, 216 S.W.2d at 173. The Court stressed the importance of the Board's policy-making functions in protecting the public interest, and concluded that:

> The public, as well as the affected private parties, has an interest in upholding the order of the Board if it is valid, and the Board itself is the proper party to represent this public interest where its order is under review.

*Id.*, 216 S.W.2d at 173. It is true, as alleged by appellants, that *Stovall* only held that the Board was a proper party, not an indispensable party, as the Board had already been made a party. However, our analysis of the *reasoning* in *Stovall*, compels us to the conclusion that the Board was an indispensable party therein. *Id.*, 216 S.W.2d at 172–74.

■ We likewise conclude that the language in article 1011g sections (j) through (n) implies that the Board is an indispensable party. The trial court may "on notice to the Board" grant a restraining order. TEX.REV.CIV.STAT.ANN. art. 1011g, sec. (k). *See Sams v. Dema*, 316 S.W.2d 165 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.) (holding that one private party may not sue another private party to restrain the second party from violating a zoning ordinance.) In reviewing actions of the Board, the trial court is not confined to the mere recitations in the record produced by the writ of certiorari. The court may go beyond the record and inquire about matters not in the record. It may hear evidence or appoint a referee to do so, and may reverse, affirm, wholly or partly, or modify the Board's decisions. TEX.REV. CIV.STAT.ANN. art. 1011g, sec. (m). In

---

5. We interpret the trial court's judgment to mean that the Board is an "indispensable" party.

*See* TEX.R.CIV.P. 39(b).

addition, the Board is at jeopardy for costs if the court finds the Board acted with gross negligence, with malice, or in bad faith in making the decision appealed from. TEX.REV.CIV.STAT.ANN. art. 1011g, sec. (n). The entire focus of the trial court is upon the action of the Board. It would be unfair for the court to determine its course of action about the Board or its decision, if the Board was not a party-defendant to the action before the court, with the opportunity to participate in the trial. In fact, it is possible for a particular party to be so indispensable to a suit that the suit must be dismissed for want of jurisdiction if that party is not properly joined. *See Travis Heights. Imp. Ass'n v. Small,* 662 S.W.2d 406, 413 (Tex.App.—Austin 1983, no writ). We believe the Board, in a lawsuit which is an appeal of its decision, is such an indispensable party.

In the *Travis Heights* case, the City of Austin was held to .be an indispensable party to a declaratory judgment suit seeking to invalidate a zoning ordinance. *Id.* at 413. The City of Austin was non-suited prior to the declaratory judgment portion of the trial. The trial court thereafter declared it had lost jurisdiction over the action. In affirming the trial court, the Austin Court of Appeals based its holding in part on a Tyler Court of Civil Appeals decision which had held that a trial court lacked jurisdiction to interpret or enjoin enforcement of penal ordinances, if the city which adopted the ordinances, being an indispensable party, was not joined. *Id.* at 413; *cf. Airport Coach Service, Inc. v. City of Fort Worth,* 518 S.W.2d 566 (Tex. Civ.App.—Tyler 1974, writ ref'd n.r.e.). Although the *Travis Heights* case concerned joinder of *a city* as an indispensible party, *and not* the more narrow consideration involving *an administrative board,* we believe the same joinder analysis applies in this case; i.e. it is not proper for a court to render a decision affecting the action of the Board, without the Board as a party to the lawsuit.

The Board's action is the sole activity complained of in the suit. As the actor in question, it is inconceivable that relief on a complaint against the Board could be granted without joinder of the Board and notice to it *as a party-defendant.*[6] We so hold. We overrule the second point of error.

■ In their first point of error, appellants contend that, even if we determine that the Board was a necessary party, the trial court erred in finding that the Board was not joined as a party-defendant in the original petition filed on January 18, 1985.[7] Appellants argue that the "Plaintiff's Original Petition" adequately identified the Board as a defendant, *even though the Board was not so named.* In relevant part, the petition enumerates the Board's actions and alleges that the Board's order is arbitrary and a clear abuse of discretion. We do not agree that this language is sufficient to convert the Board *into a named party-defendant.*

It is well settled that knowledge of a suit is not enough to convert an unnamed person into a defendant. Texas jurisprudence does not recognize defendants by implication. In the words of the Supreme Court of Texas:

> To make one having an interest in an action a party, the petition must make him a party; and, if he does not voluntarily appear, he must be cited. That he knows of an existence of a suit, and could have intervened, makes no difference.

*McDonald v. Miller,* 90 Tex. 309, 39 S.W. 89, 95 (1897).

■ Appellants argue that service of the citation on the Board put the Board on notice that it was a defendant in the suit, and somehow that service conferred juris-

---

6. As noted in *Stovall,* 216 S.W.2d at 172, it has long been assumed that the board of adjustment is a *proper* party to a suit under article 1011g. Indeed, we have not been able to find a single case brought under article 1011g in which it is clear that neither the board of adjustment nor the city was made a party to the suit.

7. At this juncture, we recall that the "record of decisions" was filed in the Board's office on or before March 8th, 1985; yet the amended petition which first named the Board as a party, was filed March 21st, 1985.

diction of the court over the Board as a party-defendant. We are not persuaded that service of a citation to appear and answer a lawsuit when a person is not named as a respondent or defendant in the style or body of the case confers jurisdiction of the court over that person.

Appellants also argue that the writ of certiorari served on the Board's president was notice that they were seeking review of the Board's action, and in effect, when the Board complied with the writ, that it was equivalent to acknowledgment that the Board was a defendant. We note that the statutory writ of certiorari found in article 1011g(k) shares the same purpose as its common law counterpart—to command judges and officers of an inferior body to return certified records of proceedings to superior court for review. *Boehme Bakery,* 190 S.W.2d 67, 69; *City of Lubbock v. Bownds,* 623 S.W.2d at 755. Although appellants rely on *Bownds* to support their contention, it appears that in *Bownds,* the *City was made* a party-defendant, and there is no contention in *Bownds* that the petition was not timely filed. *Id.,* at 754. Thus, the facts in *Bownds* do not support the interpretation urged by appellants that service of the writ confers jurisdiction of the court over a person to make him a defendant. The Board had to respond to the writ; its compliance was not an acquiesence that it was a party-defendant.

We hold that an entity is *not* a party to a lawsuit without being so named. *See Southern Surety Co. v. Arter,* 44 S.W.2d 913, 914–16 (Tex.Comm'm App.1932, judgment adopted). We agree with appellant that "pleadings are sufficient if they give the opposing party fair notice of the claim involved," citing *Castleberry v. Goolsby Bldg. Corp.,* 617 S.W.2d 665, 666 (Tex.1981). However, in the pleadings on file herein, the Board is *neither named* as a party-defendant, *nor* can it be said the Board is *an opposing party* in the pleadings as read. Justice Campbell in *Castleberry* observed:

> The object and purpose of pleading is to give fair and adequate notice to the party being sued of the nature of the cause of

action asserted against him so he may adequately prepare his defense.

*Id.* Simply stated, until the amended petition was filed on March 21, 1985, the Board was not a party-defendant being sued. That date was more than 10 days after the decision was filed in the office of the Board. Point of error one is overruled.

In their third point of error, appellants argue that the trial court erred in holding that the procedural steps necessary to invoke the trial court's jurisdiction were not taken. In their fourth point of error, they argue that if there were material defects in their writ of certiorari, the appellate remedy is to remand to the trial court to allow them to complete the procedural steps. Appellants rely on *Bownds,* 623 S.W.2d 752.

In *Bownds,* the court held that the trial court's jurisdiction is not fully activated until the following occur:

(1) the petition has been timely filed;

(2) the writ of certiorari has been issued and served on the Board; and

(3) the Board has made its return.

*Bownds,* 623 S.W.2d at 755.

In *Bownds,* the petition against the Board of Adjustment was timely filed and an order was signed allowing a writ of certiorari, but the writ was never issued. Under these circumstances, the appellate court remanded the case to the trial court to have the writ issued and the appropriate steps taken thereafter in the trial court.

In the instant case, the petition *naming the Board as a defendant* was not timely filed, therefore, *Bownds* is not on point. Because the ten-day deadline in article 1011g(j) was not met, and could not later be met, dismissal was proper in this case. Points of error three and four are overruled.

As we have overruled all of appellants' points of error, we affirm the judgment of the trial court.